## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JEREMY HIMAN, CLAUDETTE BECK, IAN FAWCETT, ALLEN POLAK, and MARK PROSNIEWSKI, individually and on behalf of others similarly situated, | |
| Plaintiffs, | Case No.: 2:21-cv-00004 |
| vs. | CLASS ACTION |
| THOR INDUSTRIES, INC., an Indiana corporation, DRV LLC, an Indiana Corporation, and, JAYCO CORP., an Indiana Corporation, and KEYSTONE RV COMPANY., an Indiana Corporation. | **COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiffs Jeremy Himan, Claudette Beck, Ian Fawcett, Allen Polak, and Mark Prosniewski (collectively, "Plaintiffs") bring this action against Thor Industries, Inc., (hereinafter, "Thor" or "Defendant Thor") and its subsidiaries DRV LLC ("DRV" or "Defendant DRV"), Keystone RV Company ("Keystone" or "Defendant Keystone"), and Jayco Corp. ("Jayco" or "Defendant Jayco") (collectively, "Defendants"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.       This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of recreational vehicles ("RVs") manufactured, marketed and distributed by Defendants with defective axles that result in unstable and unsafe conditions while driving, including leaking axle seals (the "Axle Defect") which in turn cause grease to contaminate the brake pads and rotors equipped in Defendants' RVs containing Lippert

- 1 -

axles and components ("Class Vehicles").

2.      The Axle Defect predisposes the Class Vehicles to sudden and catastrophic brake failure and unstable driving, thereby exposing operators, occupants and other motorists to unreasonable and substantial safety risks, including a heightened risk of accidents and physical injury.

3.      Thor and its subsidiaries have long been aware of the Axle Defect due to public news accounts; complaints made to the National Highway Traffic Safety Administration ("NHTSA"); other publicly-available complaints; and Defendants' own pre-sale durability testing.

4.      Not only did Defendants fail to disclose this known Defect and its impact on the intrinsic and resale value of the Class Vehicles, they also actively concealed the Axle Defect from both Plaintiffs and the Class.

5.      Despite Defendants' longstanding knowledge of the Axle Defect, Thor and its subsidiaries continued to manufacture, market and distribute RVs with the Axle Defect for many years, to the detriment of consumers. Neither Thor nor any of its subsidiaries have recalled the Class Vehicles to repair the Axle Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse customers who have incurred out-of-pocket expenses to repair the Axle Defect.

6.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.

7.      Had Plaintiffs and other Class members known about the Axle Defect at the time of purchase or lease, they would not have purchased or leased Class Vehicles or would have paid

substantially less for them and would have avoided the significant out of pocket expense of repairing their Class Vehicles once the latent Axle Defect manifests.

8.     As a result of the Axle Defect and the considerable monetary costs associated with attempting to repair it, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Defendants' conduct.

9.     Accordingly, Plaintiffs bring this action to redress Defendants' violations of various state consumer protection statutes and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*., and to recover for Defendants' breach of express and implied warranties, common law fraud and unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and the Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this District, maintain their corporate headquarters in this District, are subject to personal jurisdiction in this District, and therefore are deemed to be citizens of this District. Additionally, Defendants have advertised in this District and have received substantial revenue and profits from their sales and/or leases of Class Vehicles in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

This Court has personal jurisdiction over Defendants because: Thor's corporate headquarters and the headquarters of all its subsidiaries are located in this District; Defendants are registered with the Indiana Secretary of State as for-profit corporations permitted to operate in Indiana; Defendants conduct substantial business in the District; a substantial part of the acts and omissions complained of occurred in the District; and Defendants have intentionally and purposefully placed Class Vehicles into the stream of commerce within Indiana and throughout the United States.

## THE PARTIES

### Plaintiff Jeremy Himan

12.    Plaintiff Himan is a citizen of the State of Indiana, and currently resides in Chesterton, Indiana.

13.    In April of 2016, Plaintiff Himan purchased a new 2016 Jayco Eagle 345BHTS from Haylett RV in Coldwater, Michigan.

14.    Prior to purchasing the RV, Plaintiff Himan reviewed and relied upon information furnished by Jayco and its representatives, which did not disclose or mention the Axle Defect. Sources of this information included:

   a.  Jayco's Website

   b.  Local area RV dealerships

   c.  RV trade shows

15.    In April of 2019, Plaintiff Himan noticed that he was having braking issues, and took his vehicle in for a brake tune-up at Campland RV in Burns Harbor, Indiana.

16.    Upon being inspected, the mechanics told him that his axle seals had failed, and that his brake assemblies and axle seals would have to be completely replaced.

17.     Additionally, Plaintiff Himan has had damage done to the brakes of the truck he primarily uses to tow the RV, a 2019 Chevy 3500, as a result of increased strain due to the malfunctioning RV brakes.

18.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith or would have paid less for the vehicle.

19.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Claudette Beck**

20.     Plaintiff Claudette Beck is a citizen of the State of Kansas, and currently resides in Liberal, Kansas.

21.     In June of 2017, Plaintiff Beck purchased a 2018 DRV RESB3 Mobile Suite by delivery order.

22.     Prior to purchasing the RV, Plaintiff reviewed and relied upon statements from DRV representatives, authorized dealers, and marketing materials which did not disclose or mention the Axle Defect. Information and pamphlet materials were collected at locations including:

     a.   A tour of the DRV production factory

     b.   Walnut Ridge RV in New Castle Indiana

      c.   DRV's website

23.     Throughout her first year of owning the RV, Plaintiff Beck noticed continual and excessive wearing on her tires which required continual purchasing and replacement of new tires.

24.     In January of 2019, Plaintiff Beck took the RV to be inspected and was told that the issue related to malfunctioning axle components, including the axle seals, but that it would not be repaired under warranty.

25.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith or would have paid less for the vehicle.

26.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**<u>Plaintiff Ian Fawcett</u>**

27.     Plaintiff Fawcett is a citizen of the state of New York, and currently resides in Hopewell Junction, New York.

28.     In December of 2015, Plaintiff Fawcett purchased a 2016 Keystone Springdale 260 RLS from Alpen Haus in Amsterdam, New York.

29.     Prior to purchasing the RV, Plaintiff reviewed and relied upon marketing materials produced by Keystone, and conversations with authorized dealers and Keystone representatives, which did not disclose or mention the Axle Defect. Information and marketing

materials were collected at locations including:

      a.   The RV Trade Show in Springfield, Massachusetts

      b.   Albany RV in Albany, New York

      c.   Boat-N-RV Warehouse in West Coxsacie, New York

      d.   Camping World in Kingston, New York

      e.   Alpin Haus in Amesterdam, New York

30.      Throughout his first year of ownership, Plaintiff Fawcett noticed excessive grease around his wheels and axles, as well as premature and excessive tire wearing.

31.      In December of 2016, Plaintiff Fawcett took the RV in for its annual inspection and was told there was a bent axle, which was replaced.

32.      Unfortunately, this did not stop his greasing problem or excessive tire wearing, which necessitated the replace of the RV's axle seals in September of 2020 after an RV tire fell off of the vehicle while the RV was in operation.

33.      Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith or would have paid less for the vehicle.

34.      Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Mark Prosniewski**

35.    Plaintiff Mark Prosniewski is a citizen of the state of Illinois, and currently resides in Bartlett, Illinois.

36.    In June of 2017, Plaintiff Prosniewski purchased a 2017 Jayco 38 REFS from Holiday Hour RV (currently d/b/a Gander Mountain RV) in DeKalb, Illinois.

37.    Prior to purchasing the RV, Plaintiff reviewed and relied upon information found on Jayco's website and furnished by Jayco at the Chicago RV & Camping Show, which did not disclose or mention the Axle Defect.

38.    In September of 2018, Plaintiff Prosniewski had a total brake failure on his RV.

39.    When the RV was inspected, Plaintiff Prosniewski was informed the axle seals had failed, coating the brake pads in grease. He then paid to have his axle seals replaced.

40.    However, despite this replacement, the axle seals once again failed in September of 2019, necessitating another axle seal replacement.

41.    Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith or would have paid less for the vehicle.

42.    Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Plaintiff Allen Polak**

43.     Plaintiff Allen Polak is a citizen of the state of Wisconsin, and currently resides in Mukwonago, Wisconsin.

44.     In February of 2016, Plaintiff Polak purchased a new 2016 Jayco Eagle RSTS from Freedom RV (currently d/b/a/ Kunes County Freedom RV) in Slinger, Wisconsin.

45.     Prior to purchasing the RV, Plaintiff reviewed and relied upon numerous conversations with authorized dealers and pamphlets written by Jayco describing its products which did not disclose or mention the Axle Defect. Information was collected at dealerships and trade shows including:

      a.  Annual visits to the Milwaukee RV Show at the Wisconsin State Fair in West Allis, Wisconsin.

      b.  The Wisconsin RV Show in Milwaukee, Wisconsin

      c.  The Madison Camper & RV Show and Sale in Madison, Wisconsin

      d.  Appleton Camping Center in Appleton, Wisconsin

      e.  Roskopf's RV in Richfield, Wisconsin

      f.  Kunes Country RV in Elkhorn, Wisconsin

      g.  New Generation RV in Burlington, Wisconsin

      h.  General RV in Wayland, Michigan

      i.  Krenek RV Super Center in Coloma, Michigan

46.     During the summer of 2020, Plaintiff Polak noticed that his RV's braking capacity had been greatly diminished.

47.     When he investigated the issue, Plaintiff Polak found that all four brake shoes were soaked with grease.

48.     Then, when Plaintiff Polak elevated the RV and tried to spin the wheel, he observed that the excess grease in the brake assembly would cause the shoes and the braking magnet to make contact with the brake drum, hindering the wheel and causing a loud clanking noise.

49.      As a result, Plaintiff Polak was forced to purchase and install new axle seals and loaded brake backing plates.

50.     After this installation, Plaintiff Polak immediately noticed improved braking performance.

51.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed any Plaintiff of the existence of the Axle Defect prior to purchase. Had Defendant disclosed the Axle Defect to Plaintiffs, Plaintiffs would not have purchased a Class Vehicle and would have avoided the extensive repair costs associated therewith or would have paid less for the vehicle.

52.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Axle Defect, including, but not limited to, the out-of-pocket expenses and loss associated with the Axle Defect and future attempted repairs, as well as the diminished value of the Class Vehicle.

**Defendants Thor Industries, Inc., DRV, LLC, and Jayco Corp.**

53.     Defendant Thor Industries, Inc., is a for-profit parent corporation registered to do business in Indiana with its principal place of business located at 601 East Beardsley Avenue Elkhart, IN 46514, USA.[1]

---

[1] Public Business Search, INDIANA SECRETARY OF STATE, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "Thor Industries") (last visited Dec. 14, 2020).

54.     Defendant DRV, LLC, is a limited liability company registered to do business in Indiana with its principal place of business located at 601 East Beardsley Avenue Elkhart, IN 46514, USA.[2]

55.     DRV is a domestic for-profit corporation doing business within the United States that designs, manufactures, distributes, sells and warrants recreational vehicles, including the Class Vehicles.

56.     DRV is a subsidiary of Thor Industries, Inc., having been acquired by Thor in January of 2015.[3]

57.     Defendant Jayco Corp., is a corporation registered to do business in Indiana with its principal place of business located at 301B S Main St, Ste 307, Elkhart, IN, 46516, USA[4]

58.     Jayco is a domestic for-profit corporation doing business within the United States that designs, manufactures, distributes, sells and warrants recreational vehicles, including the Class Vehicles.

59.     Jayco is a subsidiary of Thor Industries, Inc., having been acquired by Thor in June of 2016.[5]

60.     Defendant Keystone RV Company is a corporation registered to do business in Indiana with its principal place of business located at 317 W Franklin St., Elkhart, IN, 46516,

---

[2] Public Business Search, INDIANA SECRETARY OF STATE, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "DRV") (last visited Dec. 14, 2020).
[3] THOR INDUSTRIES HISTORY, https://www.thorindustries.com/history (last visited Dec. 14, 2020 2020).
[4] Public Business Search, INDIANA SECRETARY OF STATE, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "Jayco") (last visited Dec. 14, 2020).
[5] THOR INDUSTRIES HISTORY, https://www.thorindustries.com/history (last visited Dec. 14, 2020 2020).

USA.[6]

61.     Keystone RV Company is a domestic for-profit corporation doing business within the United States that designs, manufactures, distributes, sells and warrants recreational vehicles, including the Class Vehicles.

62.     Keystone is a subsidiary of Thor Industries, Inc., having been acquired by Thor in 2001.[7]

63.     Thor Industries, Inc. is the sole owner of numerous subsidiaries that design, manufacture, distribute, sell and warrant recreational vehicles, including the Class Vehicles, including Defendants DRV LLC, and Jayco Corp.

64.     Upon information and belief, Defendants jointly develop the owner's manuals, window stickers, warranty booklets, specification sheets, website information, advertising pamphlets and information included in the maintenance recommendations and/or schedules for Class Vehicles.

65.     Defendants engage in continuous and substantial business throughout the United States, including in Indiana.

## TOLLING OF STATUTES OF LIMITATION

66.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Axle Defect within the Class Vehicles until shortly before this class action litigation was commenced.

---

[6] https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "Keystone RV") (last visited Dec. 14, 2020).
[7] THOR INDUSTRIES HISTORY, https://www.thorindustries.com/history (last visited Dec. 14, 2020 2020).

67.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles and the axles installed in them, that the Axle Defect presents substantial safety risks, as well as the fact that the Axle Defect will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of Defendants' active concealment of the Axle Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.      The Axle Defect within the Class Vehicles.**

68.     In 1980, Thor Industries, Inc., was created after the acquisition of the RV brand Airstream by Thor's founders.

69.     By both expanding its product lineup and through the acquisition of prominent RV brands such as Dutchmen in 1991, Keystone RV in 2001, Heartland RV Company in 2010, DRV Luxury Suites in 2015, Jayco, Corp., in 2016, and Erwin Hymer in 2019, Thor has grown into the largest RV manufacturer in the world.[8]

70.     Through itself and its subsidiaries, Thor markets and sells over a hundred different lines of RV including, but not limited to:

   a.  Thor models: Palazzo, Arla, Venetian, Tuscany, Axis, Vegas, A.C.E., Hurricane, Windsport, Miramar, Challenger, Compass, Gemini, Chateau, Four Winds, Quantum, Omni, Magnitude, and Outlaw;

   b.  DRV models: RSSB3, RSB3, RSSA, Atlanta, Manhattan, Columbus, Cumberland, Houston, Memphis, Nashville, Santa Fe, JX390, JX450, LX450, and

---

[8] THOR INDUSTRIES HISTORY, https://www.thorindustries.com/history (last visited Dec. 14, 2020 2020).

LX455;

    c.    Heartland models: Bighorn, Big Country, Elkridge, Landmark, Pioneer, Cyclone, Gravity, Lithium, Road Warrior, Torque, Fuel, Prowler, Trail Runner, North Trail, Wilderness, Mallard, and Sundance;

    d.    Jayco models: Jay Feather, Jay Hawk, Jay Flight, Eagle, North Point, Pinnacle, Talon, and Seismic; and

    e.    Keystone models: Alpine, Avalanche, Bullet, Cougar, Fuzion, Impact, Hideout, Montana, Outback, Passport, Raptor, Carbon, Retreat, and Springdale.

71.    Thor attributes its success not just to "strength in numbers" but to "strength in quality." It claims to have "grown through being selective, through finding those who pioneer, who deliver on their promises, and who make the best products and the best experiences."[9]

72.    Upon information and belief, at all times relevant hereto, Defendants equipped their RVs with axles manufactured by Lippert Components. Reproduced below is a diagram of a Lippert trailer brake and hub housing, as well as a picture of the assembled axle housing attached to the suspension.

---

[9] THOR INDUSTRIES HISTORY, https://www.thorindustries.com/history (last visited Dec. 14, 2020 2020).



| Callout | Part # | Description |
|---|---|---|
| A | 122065 | Rubber plug for lubed grease caps |
| B | 122064 | Dust cap, for 2.5" bore, super lube |
| | 122071 | Dust cap, for 2.5" bore, non-lube |
| C | 122075 | Cotter pin |
| D | 122081 | Spindle nut, 6 slot |
| E | 179660 | Spindle washer, round ID |
| E1 | 172888 | Spindle washer, for spindle with D-flat |
| E2 | 119216 | Spindle locking tang washer |
| Use E1 and E2 in place of C and E if spindle has no hole for cotter pin and has D-flat on all axles built prior to 2009 | | |
| F | 122091 | Outer bearing cone, 15123 |
| | 122996 | Outer bearing cup, 15245 |
| | 122094 | Brake Hub; 655; ½" studs |
| G | 122095 | Brake Hub; 865; ½" studs |
| | 122096 | Brake Hub; 865; ⅝" studs |
| H | 122066 | Inner bearing cone, 25580 |
| | 124287 | Inner bearing cup, 25520 |
| I | 122088 | Grease seal, double lip, 2.25" ID x 3.376" OD |

Rev: 03.14.2014    Contact us: Lippert Components Inc. - www.lci1.com/customerservice - Phone: (574) 537-8900 - Email: warranty@lci1.com    6200 Axle Webpage
Page 30



73.    Lippert produces these axles through a process which includes fabricating the component parts, finishing and treating the axle shaft, and installing the axle seals.

74.    These completed axles are then delivered to the Defendants, where they are used

as a component part in RVs including Class Vehicles.

75.    The Lippert Components axles that Defendants install in their RVs contain a defect in both the axles and axle seals, which causes the axles to both become unstable during operation and to leak grease that contaminates the brake pads and rotors equipped in Class Vehicles. The Defect directly impacts the ability of the Class Vehicle and tow vehicle to stop safely and to safely control the vehicle.

76.    SKF Group, a leading bearing and seal manufacturing company, has published industry standards for the proper installation of seals on vehicle axles. The guide indicates that proper installation depends on three conditions: 1. Condition of the shaft; 2. Condition of the bore; and 3. Using the proper techniques for seal installation.[10]

77.    Before the axle seals are installed onto the axle, the SFK Guide recommends several procedures to ensure that the axle seal will remain affixed to the axle itself, as to prevent any grease leakage.

78.    Because conventional machining can produce invisible "spiral marks, called machine lead" on the surface of the axle, the SFK Guide recommends "plunge grinding" as the appropriate method for "removing machine lead and assuring proper shaft finish." Without this plunge griding, the machine lead "will auger or pump lubricant out of the assembly [causing] leakage and lip damage, especially at higher speeds."[11]

79.    Additionally, SKF, like most all seal manufacturers suggests a heat-treated shaft finish "between 10 to 20 micro inches," approximately .0003 to .0005 millimeters, in order to avoid grease leakage and avoid grease contamination.

_____

[10] SKF GROUP, AUTOMOTIVE SEALS SELF-STUDY GUIDE: EXPANDING YOUR KNOWLEDGE OF SEALS AND RELATED COMPONENTS 27 (rev. 12/09) ("SKF Guide").
[11] *Id.* at p. 28.

80.    In contrast to the best practices outlined in the SFK Guide, Lippert's axle shafts suffer from a defect in materials and/or workmanship, because Lippert failed to plunge grind the axle shafts to an adequate or commercially reasonable finish. Lippert does not heat treat the shaft and specifies a finish of only 63 micro inches (.0016 millimeters) or less.

81.    Lippert asserts its specifications are adequate because trailer hubs are, in its view, low speed, purportedly allowing Lippert to deviate from commercially reasonable specifications and industry standards. As the experiences of Plaintiffs and Class members demonstrate, however, Lippert's manufacturing failure causes grease to leak through the axle seals, contaminating brake pads and rotors in RVs Defendant and other manufacturers equipped with Lippert axles.

82.    As Lippert itself recognizes, "[i]f grease contaminates the brakes, there will be diminished braking capability[,]"[12] a condition that may result in catastrophic brake failure and accidents. The grease contamination the Axle Defect causes in brake pads and rotors thus poses an unreasonable and substantial safety risk to Vehicle operators and occupants, and other motorists, as the experiences of Plaintiffs and other Class members reflect.

83.    As a result of the Axle Defect, Class Vehicles are unreasonably dangerous and unsuited for the ordinary and intended purpose of providing safe and reliable transportation.

**B.    Defendants' Knowledge of the Axle Defect.**

84.    At all times relevant to this Complaint, Defendants were well aware of the problems with the axles, brake pads and rotors it equipped in Class Vehicles because Defendants are all experienced designers and manufacturers of recreational vehicles.

---

[12] LIPPERT COMPONENTS, AXLE GREASE/BRAKE CONTAMINATION FACT SHEET (2018), https://lci-support-doc.s3.amazonaws.com/technical-information-sheets/axles-and-suspension/ccd_0001671.pdf (last visited Oct. 21, 2020).

85.     As experienced manufacturers, Defendants conduct testing, including pre-sale durability testing, on incoming components, including axles, to verify that the parts are free from defects and meet specifications.

86.     Defendant Thor, both itself and through its subsidiaries, touts robust pre-sale testing procedures, publicly representing the fidelity of their testing processes in statements such as the following:

  a.  Thor: "Thor Motor Coach requires every motorhome built to pass a detailed 200+ point Gold Star Inspection where many of our competitors simply spot check for quality on a few of their coaches. To take it a step further, every coach is subjected to a real world road test and a high pressure 360 degree rain test that simulates a tropical hurricane."[13]

  b.  DRV: "Before any RV unit is shipped out to our dealers, each unit undergoes a strenuous series of testing and inspection."[14]

  c.  Heartland: "We have integrated comprehensive testing and quality control standards throughout the production process…We also gather customer feedback through shows, plant tours, phone calls, e-mails, owners forum, rallies and letters. Heartland RV's goal is to set the standard in quality."[15]

  d.  Jayco: "One of the reasons we have the confidence to offer you a two-year warranty on every Jayco RV is because of the myriad of tests that we put the unit

[13] THOR MOTOR COACH – GOLD STAR INSPECTIONS, https://www.thormotorcoach.com/gold-star-inspection/ (last visited Dec. 14, 2020).
[14] DRV SUITES – PRE-DELIVERY INSPECTION VIDEO, http://www.drvsuites.com/videos.html (last visited Dec. 14, 2020).
[15] HEARTLAND RV'S – EXPERIENCE, https://heartlandrvs.com/experience/ (last visited Dec. 14, 2020).

through, not only as they go down the production line, but before we even begin to assemble them."[16]

e.  Keystone: "Keystone RV also has some of the highest manufacturing standards in the industry with exhaustive in-plant quality inspection and audit processes…An autonomous secondary quality inspection facility and team provides an additional review and measure of security."[17]

87.    Through these quality control measures, Defendants knew or should have known that the axles in the Class Vehicles were defective.

88.    Buyers, lessees, and other owners of the Class Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of Class Vehicles. Had these buyers and lessees known of the Defect and the potential harm it poses, they would have taken steps to avoid that harm and/or would have paid less for the Class Vehicles than the amounts they actually paid, or would not have purchased the Class Vehicles at all.

89.    Despite their knowledge of the Axle Defect, Defendants failed to either notify Class members of the nature and extent of the problems with the Class Vehicles or provide an adequate remedy.

90.    In addition, many consumers have complained to both the NHTSA and in other public fora about the Axle Defect, as discussed *infra.*

---

[16] JAYCO – QUALITY ASSURANCE VIDEO, https://www.jayco.com/tools/videos/?v=0010 (last visited Dec. 14, 2020).
[17] KEYSTONE RV – ABOUT KEYSTONE, https://www.keystonerv.com/about-keystone (last visited Dec. 14, 2020).

C.    **Complaints by Other Class Members.**

91.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of news articles and other websites with accounts of the exact same Axle Defect within the Class Vehicles.

92.    Moreover, the Office of Defects Investigation within NHTSA conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.[18] All vehicle manufacturers, including Thor and its subsidiaries, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Defendants thus had knowledge of any and all NHTSA complaints.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

93.    A sampling of Class member complaints submitted to NHTSA regarding Thor and its subsidiary's RVs, many of which reference information provided to the Defendants about this issue their plaguing Class vehicles, makes clear Defendants are aware of the Axle Defect.

94.    These publicly available complaints filed with NHTSA as early as July of 2015,[19] evidence Defendants' knowledge of the Axle Defect and Class Members' negative experiences with Class Vehicles due to the Defect:

> **Consumer No. 1:**
>
> FEW MONTHS AGO THE TRAILER BRAKES WERE IRRATIC [sic] (UNRELIABLE). I TOOK THE TRAILER TO REPAIR

---

[18] *See* NHTSA – MOTOR VEHICLE DEFECTS AND SAFETY RECALLS: WHAT EVERY VEHICLE OWNER SHOULD KNOW, https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm. (last visited Oct. 19, 2020) (Indeed, vehicle manufacturers are required by law to report any potential safety defects to the United States government).

[19] *See* NHTSA complaint posted by consumer in Indianapolis, Indiana on July 1, 2015 at https://www-odi.nhtsa.dot.gov/VehicleComplaint/ (last visited Dec. 15, 2020) (NHTSA ID Number 10885443) (reproduced in its entirety below).

FACILITY. IN SEARCHING FOR THE PROBLEM, THEY DISCOVERED THAT THE RUBBER GASKET ON ALL FOUR INNER GREASE SEALS WERE SEVERELY DAMAGED BECAUSE THEY WERE UNDERSIZED.[20]

**Consumer No. 2:**

THE CONTACT OWNS A 2017 KEYSTONE SPRINTER CAMPFIRE TRAVEL TRAILER. THE CONTACT STATED THAT THE AXLE AND BRAKE SYSTEM MANUFACTURED BY LIPPERT CORPORATION HAD DEFECTIVE GREASE SEALS ON THE BRAKE AXLES. THE GREASE LEAKED ONTO THE BRAKE SHOES, WHICH PREVENTED THEM FROM WORKING PROPERLY. THE TRAILER WAS INSPECTED AND THE CONTACT WAS INFORMED THAT THE BRAKE AXLES NEEDED $1,200 WORTH OF REPAIRS.[21]

**Consumer No. 3:**

PROBLEM WITH MY BRAKES. NO BRAKES ON THREE WHEELS. NEED TO CHECK IN FALL 2017 AND THERE WAS FULL GREASE IN THE HUB. THATS WHY NO BRAKES.[22]

**Consumer No. 4:**

PROBLEM WITH MY BRAKES. NO BRAKES ON THREE WHTHE LIPPERT 7K LB AXLE GREASE SEALS WERE LEAKING WHEN I DISASSEMBLED THE WHEEL SEALS AND BEARINGS IN ORDER TO REPACK THE BEARINGS. THE OIL SEAL HAD LEAKED WHICH RESULTED IN A COATING OF GREASE ON EVERYTHING INSIDE THE BRAKE DRUM AND BRAKE PADS. I HAVE 10K MILES PULLING THIS TRAILER. THE BRAKE PADS STILL HAVE MUCH PAD LEFT. THE AXLE SPINDLE HOUSING WAS FULL OF GREASE, INDICATING EITHER THE DEALER OR FACTORY USED THE QUICK GREASE ZERK FITTING AND OVERFILLED WITH GREASE WHICH BLEW OUT THE GREASE SEAL. I'VE READ ON JAYCO FORUMS THIS IS A

---

[20] Posted by consumer in Indianapolis, Indiana on July 1, 2015 at https://www-odi.nhtsa.dot.gov/VehicleComplaint/ (last visited Dec. 15, 2020) (NHTSA ID Number 10885443).

[21] Posted by consumer in Modena, New York on July 23, 2019 at *id.* (last visited Dec. 15, 2020) (NHTSA ID Number 11234058).

[22] Posted by consumer in Estero, Florida on December 7, 2019 at *id.* (last visited Dec. 15, 2020) (NHTSA ID Number 11287647).

COMMON PROBLEM, SO I NEVER USED THE QUICK FITTING MYSELF, SINCE I DON'T DRIVE THE AXLE UNDER WATER. OWNERS SHOULD BE WARNED OF THIS PROBLEM, SINCE IT COULD LEAD TO BRAKE FAILURE.ELS. [sic][23]

**Consumer No. 5:**

HE [sic] CONTACT OWNS A 2017 JAYCO PINNACLE. WHILE DRIVING 60 MPH, EXTRA FORCE WAS NEEDED TO BRING THE VEHICLE TO A STOP. THE CONTACT ALSO MENTIONED THAT WHEN DRIVING OVER A BUMP, THE VEHICLE FELT AS IF IT HAD NO SPRINGS. THE VEHICLE WAS TAKEN TO CAMPERS INN RV OF OCALA (7677 S, HWY 441, OCALA, FL 34480, (800) 786-2252) WHERE THE CONTACT WAS INFORMED THAT THE WHEEL BEARING LEAKED GREASE ONTO THE BRAKE PADS. THE AXLE MADE CONTACT WITH THE FRAME OF THE VEHICLE AND CAUSED THE TIRES TO TOUCH THE FRAME.[24]

95.    In addition, many consumers have complained about the Axle Defect at a number

of third-party websites, with a small sample of such complaints below:

**Consumer No. 7:**

I finally got around to pulling the wheels and drums to check things out. Wouldn't you know there was grease leaking past the seals and getting on the brakes and drums of the right side wheels (haven't checked the left yet). I cleaned everything up and replaced the brake shoes. Installed new seals and put it back together.[25]

**Consumer No. 8:**

We bought a 2017 339FLQS last Oct. On our way home from Florida in July, the brakes on the Eagle seemed little to none. My better half pulled the first wheel to find grease everywhere and to

---

[23] Posted by consumer in Leakey, Texas on February 9, 2019 at *id.* (last visited Dec. 15, 2020) (NHTSA ID Number 11175899).

[24] Posted by consumer in Daytona Beach, Florida on September 25, 2019 at *id.* (last visited Dec. 15, 2020) (NHTSA ID Number 11257986).

[25] User *tslarson*, Jᴀʏᴄᴏ Oᴡɴᴇʀꜱ Fᴏʀᴜᴍꜱ, (June 30, 2016, 07:05 AM), https://www.jaycoowners.com/forums/f18/why-our-axle-grease-seals-leak-37595.html (last visited Dec. 15, 2020).

our dismay all 4 wheels were the same!![26]

**Consumer No. 9:**

On one side, the wheel bearing seal failed, and the grease has contaminated the brake pads. Since they have to replace both sides the total comes out to about $600. I asked about the likelihood of this happening when the trailer is only 2 years old, with only about 1,000 miles on it.[27]

**Consumer No. 10:**

I didn't like the braking performance of the trailer, so up in the air it went. Pulled the tires and then the drums. Two of the drums had a rather large quantity of grease in the brake shoe ares [sic], thereby making them ineffective. The grease seals were blown out on those two hubs.[28]

96.     In addition to these many consumer complaints, Defendants had knowledge of the

Defect due to media reporting, and Lippert's own public statements.

97.     On February 17, 2017, Lippert's Vice President of RV Sales responded to reports

of Lippert axle seals failing saying "that his company is, indeed, aware of the problem and aware

of the conversation among [owners of RVs with Lippert axles]."[29]

98.     This statement was covered by RV reporting websites including RV Daily News[30]

---

[26] User *Delgal*, JAYCO OWNERS FORUMS (Aug. 22, 2017, 12:08 PM), https://www.jaycoowners.com/forums/f6/lippert-brake-seal-failure-50183.html (last visited Dec. 14, 2020).

[27] User *Bisjoe*, KEYSTONE RV FORUMS (Sep. 20, 2019, 8:49 AM), https://www.keystoneforums.com/forums/showthread.php?t=39870 (last visited Dec. 15, 2020).

[28] User *Big-Foot*, THOR FORUMS (July 13, 2019, 9:00 PM), https://www.thorforums.com/forums/f29/wheel-bearings-18091-2.html (last visited Dec. 14, 2020).

[29] Greg Gerber, *Lippert Addresses Reports of Leaking RV Axles*, RV DAILY REPORT (Feb. 17, 2017), [permalink: https://web.archive.org/web/20181005211802] (last visited Dec. 14,, 2020) (RV Daily Report is no longer in operation, the cited hyperlink is to an archive of the website as of Oct. 5, 2018).

[30] *Id.*

and RVHeadlines.com.[31]

99.     Additionally, the statement incited voluminous discussion on prominent RV forums including RV-Dreams,[32] My Grand RV,[33] and Jayco Owners Forums, a forum specifically dedicated to owners of Defendant Jayco's RVs.[34]

100.    These online discussions as early as February of 2017 further evidence Defendants' knowledge of the Axle Defect and Class Members' negative experiences with Class Vehicles due to the Defect.

**D.     Defendants' Practices**

101.    Despite longstanding knowledge of the Axle Defect as set forth above, Defendants refuse to provide warranty coverage for the repairs the Axle Defect necessitates.

102.    Each Defendant provided to Plaintiffs and every Class member a warranty applicable to these defects, described individually below:

    a.  Thor: Twelve-month "Limited Warranty" covering defects in workmanship performed and/or materials used" to assemble the motorhome.[35]

    b.  DRV: One-year "Limited Warranty" covering "defects in materials &

---

[31] Greg Gerber, *Lippert Addresses Reports of Leaking RV Axles*, RV HEADLINES (Feb. 17, 2017), https://rvheadlines.com/2017/02/17/lippert-addresses-reports-of-leaking-rv-axles/ (last visited Dec. 14, 2020).

[32] *Lippert Addresses Reports of Leaking RV Axles*, RV DREAMS FORUMS (Feb. 17, 2017), "https://rv-dreams.activeboard.com/t63251290/lippert-addresses-reports-of-leaking-rv-axles/" (last visited Dec. 14, 2020).

[33] *Lippert Addresses Reports of Leaking RV Axles*, MY GRAND RV FORUMS (Feb. 17, 2017), "https://www.mygrandrv.com/forum/showthread.php/10235-Lippert-addresses-reports-of-leaking-RV-axles/page3" (last visited Dec 14, 2020).

[34] User *rsday75,* JAYCO RV OWNERS FORUMS (June 21, 2018, 8:40 AM), https://www.jaycoowners.com/forums/f6/wheel-bearings-58020-2.html (last visited Dec 14, 2020).

[35] THOR MOTOR COACH – WARRANTY INFORMATION, https://media.thormotorcoach.com/media/15212/tmc-warranty-guide_0441778_rev-190301_en-fr_updated-form.pdf (last visited Dec. 14, 2020).

workmanship supplied by and attributed to manufacturing & assembly of the RV."[36]

    c.   Jayco: Two-year "Limited Warranty" covering "substantial defect in material or workmanship, attributable to Jayco."[37]

103.    Nevertheless, when Class members seek warranty coverage for the Axle Defect, even within the warranty period, Defendants often fail to respond or deny warranty coverage.

104.    Moreover, some Class Vehicles manifest the Defect just outside Defendants' one- or two-year warranty period. But the mileage and temporal limitations Defendants impose on their Base Limited Warranty are unconscionable and unenforceable.

105.    Defendants provide these Limited Warranties to buyers after a purchase is complete. Buyers like Plaintiffs and Class members lack pre-sale knowledge of the Axle Defect or the ability to bargain as to the terms of the Defendants' warranties. Accordingly, the limitations Defendants imposes on the Limited Warranties—and their efforts to disclaim any implied warranties—are procedurally unconscionable because there was unequal bargaining power between Defendants and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for purchasing from Defendants alternative warranty coverage for Class Vehicles.

106.    The limitations on the warranties, including the durational limits Defendants attempt to impose on their Limited Warranties and their efforts to disclaim the implied warranty of merchantability, also are substantively unconscionable. Defendants knew Class Vehicles

---

[36] DRV – WARRANTY INFORMATION, https://drvsuites.ebait.biz/warranty/ (last visited Dec. 14, 2020).
[37] JAYCO – WARRANTY INFORMATION, https://www.jayco.com/owner/manuals/ (last visited Dec. 14, 2020).

suffered from the Axle Defect and would continue to pose safety risks after their Limited

Warranties purportedly expired, yet failed to disclose the Defect to Plaintiffs and the other Class

members while continuing to market Class Vehicles as safe and reliable.  Defendants'

enforcement of those limitations and disclaimers thus is harsh and shocks the conscience.

107.    Defendants' efforts to evade their warranty obligations with respect to the known

Axle Defect, coupled with their refusal to cover the Defect if it manifests outside the warranty's

stated term, deprives Plaintiffs and Class members of the benefit of their bargain, forcing them to

pay out of pocket to repair a defect present in Class Vehicles at the time of purchase by replacing

each and every Class Vehicle axle and seal.

## CLASS ACTION ALLEGATIONS

108.    Plaintiffs bring this action on their own behalf, and on behalf of the following

Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class consists

of the following:

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or
lessees of a Class Vehicle.

And/or, in the alternative,

**Kansas Class:**

All persons or entities in Kansas who are current or former owners and/or lessees of a
Class Vehicle.

and/or, in the alternative,

**Illinois Class:**

All persons or entities in Illinois who are current or former owners and/or lessees of a
Class Vehicle.

and/or, in the alternative,

**Indiana Class:**

All persons or entities in Indiana who are current or former owners and/or lessees of a Class Vehicle.

and/or, in the alternative,

**Wisconsin Class:**

All persons or entities in Wisconsin a who are current or former owners and/or lessees of a Class Vehicle.

109.    Together, the Nationwide Class, Kansas Class, Illinois Class, Indiana Class, and/or Wisconsin Class will be referred to collectively as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change or expand the Class definition.

110.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that hundreds or thousands of Class Vehicles have been sold and leased in each of the states that are the subject of the Class.

111.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a.   whether the axles in the Class Vehicles are predisposed to the Axle Defect;

      b.   whether Defendants knowingly failed to disclose the existence and cause of the

    Axle Defect;

  c. whether Defendants' conduct violates the Kansan Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*;

  d. whether Defendants' conduct violates the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-0.1 *et seq.*;

  e. whether Defendants' conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* and 720 ILCS 295/1a;

  f. whether Defendants' conduct violates the Wisconsin Deceptive Trade Practices Act, WIS. STAT. § 110.18;

  g. whether Defendants' conduct violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*;

  h. whether Defendants' conduct constitutes a breach of express warranty;

  i. whether Defendants' conduct constitutes a breach of implied warranty;

  j. whether Defendants' conduct constitutes common law fraud;

  k. whether Defendants' conduct constitutes unjust enrichment; and

  l. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

  112. <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with the Axle Defect, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

113.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

114.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

115.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**VIOLATIONS ALLEGED**

**COUNT I**
**VIOLATION OF KANSAS CONSUMER PROTECTION ACT**
**(Kan. Stat. Ann. § 50-623 *et seq.*)**
**(On Behalf of the Kansas Class)**

116.    Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

117.    Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

118.    Kansas Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

119.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

120.    Defendants willfully violated the Kansas CPA by selling the Class Vehicles without disclosing the Axle Defect.

121.    Defendants all represent on their websites that they thoroughly test their products

to ensure consumer satisfaction including in statements such as:

     a. Thor: Thor Motor Coach requires **every** motorhome built to pass a detailed 200+ point Gold Star Inspection where many of our competitors simply spot check for quality on a few of their coaches…each coach will also undergo a…Review of every Component's Fit & Finish.[38]

     b. DRV: Our [axle] frame is a true foundation for fulltime use. Underneath, we use the safest and most commercial-grade equipment we can…low-maintenance and safety are our biggest concerns.[39]

     c. Jayco: You can count on our RVs to go the distance…Quality: Unmatched engineering practices. Superior construction materials and processes.[40]

122. These statements are false and misleading because Defendants sold and leased the Class Vehicles with improperly fitted and finished axles, and which did not adhere to even industry standard safety specifications.

123. Defendants also failed to disclose to consumers the existence of the Axle Defect, which they had an obligation to do because the Axle Defect is a safety issue. Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

124. In violation of the Kansas CPA, Defendants employed fraud, deception, false

---

[38] THOR MOTOR COACH – GOLD STAR INSPECTIONS, https://www.thormotorcoach.com/gold-star-inspection/ (last visited Dec. 22, 2020).
[39] DRV SUITES – FRAMES, AXLES, TIRES AND BRAKES VIDEO, http://www.drvsuites.com/videos.html (last visited Dec. 22, 2020).
[40] JAYCO – THE JAYCO DIFFERENCE, https://www.jayco.com/about/jayco-difference/ (last visited Dec. 22, 2020).

promise, misrepresentation and/or the knowing concealment, suppression or omission of material

facts in their sale and advertisement of the Class Vehicles.

125.    Plaintiff and the Class suffered an ascertainable loss as a result of Defendants'

unlawful conduct as alleged herein.

126.    Had Plaintiffs known the truth about the Class Vehicless, they would not have

purchased the vehicles, or would not have paid as much.

127.    Kansas Class members seek damages, attorneys' fees and all other appropriate

relief under the Kansas CPA.

**COUNT II**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT
(815 ILCS 505/1 *et seq*. and 720 ILCS 295/1a)
(Brought on Behalf of the Illinois Class)**

128.     Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if

they had been set forth in full herein.

129.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois

CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact ... in the conduct of trade or

commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815

ILCS 505/2.

130.    Defendants willfully violated the Illinois CFA by selling the Class Vehicles

without disclosing the Axle Defect.

131.    Defendants all represent on their websites that they thoroughly test their products

- 32 -

to ensure consumer satisfaction including in statements such as:

    a.   Thor: Thor Motor Coach requires **every** motorhome built to pass a detailed 200+ point Gold Star Inspection where many of our competitors simply spot check for quality on a few of their coaches…each coach will also undergo a…Review of every Component's Fit & Finish.[41]

    b.   DRV: Our [axle] frame is a true foundation for fulltime use. Underneath, we use the safest and most commercial-grade equipment we can…low-maintenance and safety are our biggest concerns.[42]

    c.   Jayco: You can count on our RVs to go the distance…Quality: Unmatched engineering practices. Superior construction materials and processes.[43]

132.    These statements are false and misleading because Defendants sold and leased the Class Vehicles with improperly fitted and finished axles, and which did not adhere to even industry standard safety specifications.

133.    Defendants also failed to disclose to consumers the existence of the Axle Defect, which they had an obligation to do because the Axle Defect is a safety issue.

134.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

135.    In violation of the Illinois CFA, Defendants employed fraud, deception, false

---

[41] THOR MOTOR COACH – GOLD STAR INSPECTIONS, https://www.thormotorcoach.com/gold-star-inspection/ (last visited Dec. 22, 2020).
[42] DRV SUITES – FRAMES, AXLES, TIRES AND BRAKES VIDEO, http://www.drvsuites.com/videos.html (last visited Dec. 22, 2020).
[43] JAYCO – THE JAYCO DIFFERENCE, https://www.jayco.com/about/jayco-difference/ (last visited Dec. 22, 2020).

promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in their sale and advertisement of the Class Vehicles.

136.    Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

137.    Had Plaintiffs known the truth about the Class Vehicles, they would not have purchased the vehicles, or would not have paid as much.

138.    Illinois Class members seek damages, attorneys' fees and all other appropriate relief under the Illinois CFA.

<u>COUNT III</u>
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(Ind. Code §§ 24-5-0.5-1, *et seq.*)**
**(Brought on Behalf of the Indiana Class)**

139.    Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

140.    The Indiana Deceptive Consumer Sales Act, Indiana Code §§ 24-5-0.5-1, *et seq.* prohibits unfair and deceptive acts, omissions or practices in connection with consumer transactions acts, including, *inter alia,* the following, whether made orally, in writing, or by electronic communication:

> (b) (1) That such subject of a consumer transaction has . . . performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.
> (2) That such subject of a consumer transaction is of a particular standard, quality, . . . if it is not and if the supplier knows or should reasonably know that it is not.
> . . .
> (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it.
>
> Ind. Code § 24-5-0.5-3.

141.     The sale and distribution of the Class Vehicles to members of the Indiana Class constitutes "consumer transactions" as defined by the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-2.

142.     Defendants engaged in unlawful conduct in violation of the Indiana Deceptive Consumer Sales Act by making knowing and intentional omissions. Defendants knowingly failed to disclose the manufacturing and/or material Axle Defect in the Class Vehicles in order to secure the sale of the Vehicles, and to offer them at a premium price.

143.     Defendants all represent on their websites that they thoroughly test their products to ensure consumer satisfaction including in statements such as:

a.  Thor: Thor Motor Coach requires **every** motorhome built to pass a detailed 200+ point Gold Star Inspection where many of our competitors simply spot check for quality on a few of their coaches…each coach will also undergo a…Review of every Component's Fit & Finish.[44]

b.  DRV: Our [axle] frame is a true foundation for fulltime use. Underneath, we use the safest and most commercial-grade equipment we can…low-maintenance and safety are our biggest concerns.[45]

c.  Jayco: You can count on our RVs to go the distance…Quality: Unmatched engineering practices. Superior construction materials and processes.[46]

144.     These statements are false and misleading because Defendants sold and leased the

---

[44] THOR MOTOR COACH – GOLD STAR INSPECTIONS, https://www.thormotorcoach.com/gold-star-inspection/ (last visited Dec. 22, 2020).
[45] DRV SUITES – FRAMES, AXLES, TIRES AND BRAKES VIDEO, http://www.drvsuites.com/videos.html (last visited Dec. 22, 2020).
[46] JAYCO – THE JAYCO DIFFERENCE, https://www.jayco.com/about/jayco-difference/ (last visited Dec. 22, 2020).

Class Vehicles with improperly fitted and finished axles, and which did not adhere to even industry standard safety specifications.

145.    Defendants did not fully and truthfully disclose to their customers the true nature of the inherent defect in the axle which was not readily discoverable until after the Class Vehicles were purchased. As a result, Indiana Class members were fraudulently induced to purchase the Class Vehicles with the said Axle Defect and all of the resultant actual and potential problems. These facts that Defendants concealed were solely within their possession.

146.    Defendants intended that Indiana Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles

147.    The Indiana Class actually relied on Defendant's misrepresentations and omissions alleged herein which caused the Indiana Class to purchase Class Vehicles. Defendants' conduct caused Indiana Class members to suffer an ascertainable loss. In addition to direct monetary losses, Indiana Class members have suffered an ascertainable loss by receiving less than what was promised.

148.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by the Indiana Class. Had the Axle Defect in the Class Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

149.    The Indiana Class did not receive the benefit of their bargain as a result of Defendants' conduct.

150.    Defendants' unlawful acts, omissions or practices complained of herein affect the public interest. As a direct and proximate result of Defendant's violations of the Indiana Deceptive Consumer Sales Act. Indiana Class have suffered injury-in-fact and/or actual damage.

151.    By engaging in the acts, omissions or practices discussed above, including, but not limited to, the sale and distribution of the Class Vehicles with the Axle Defect, Defendants have violated Ind. Code § 24-5-0.5-3.

152.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Class seeks actual damages, treble damages, attorneys' fees, and any other just and proper relief as provided under the Indiana Deceptive Consumer Sales Act.

**COUNT IV**
**VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**(WIS. STAT. § 110.18)**
**(Brought on Behalf of the Wisconsin Class)**

153.    Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

154.    The Wisconsin Deceptive Trade Practices Act (Wisconsin DTPA) prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).

155.    Defendants all qualify as a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

156.    Wisconsin Class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiffs purchased or leased one or more Class Vehicles.

157.    In the course of their business, Defendants willfully failed to disclose the Axle Defect present in Class Vehicles. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

158.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Wisconsin Class members, about the true performance of the Class Vehicles.

159.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Wisconsin Class members.

160.    Defendants knew or should have known that their conduct violated the Wisconsin DTPA.

161.    Defendants owed Wisconsin Class members a duty to disclose the Axle Defect, because Defendants:

    a.    Possessed exclusive knowledge that their Lippert axle components did not meet industry standards and were prone to grease leakage;

    b.    Intentionally concealed the foregoing from the Wisconsin Subclass; and/or

    c.    Made incomplete representations that they review their components for fit and finish, and that they use and adhere to high-quality, commercial grade materials and processes.

162.    These statements are false and misleading because Defendants sold and leased the Class Vehicles with improperly fitted and finished axles, and which did not adhere to even industry standard safety specifications.

163.    Defendants' omissions and/or misrepresentations about the Axle Defect were material to Wisconsin Class members.

164.    Wisconsin Class members suffered ascertainable loss caused by Defendants' misrepresentations, concealment of, and failure to disclose material information. Wisconsin Class members who purchased the Class Vehicles either would have paid less for their vehicles

or would not have purchased or leased them at all but for Defendants' violations of the Wisconsin DTPA.

165.    Defendants had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the Wisconsin DTPA. As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, Wisconsin Class members have suffered injury-in-fact and/or actual damage.

166.    Defendants' violations present a continuing risk to Wisconsin Class members as well as to the general public. The unlawful acts and practices complained of herein affect the public interest.

167.    Plaintiffs are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because Defendants' conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

168.    Plaintiff also seeks court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

## COUNT V
### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW § 349)
### (On Behalf of the New York Class)

169.    Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

170.    The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349.

171.    New York Plaintiff and the New York Subclass members are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

172.    Defendants are all a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

173.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the Axle Defect present in Class.

174.    Defendants all represent on their websites that they thoroughly test their products to ensure consumer satisfaction including in statements such as:

a.    Thor: Thor Motor Coach requires **every** motorhome built to pass a detailed 200+ point Gold Star Inspection where many of our competitors simply spot check for quality on a few of their coaches…each coach will also undergo a…Review of every Component's Fit & Finish.[47]

b.    DRV: Our [axle] frame is a true foundation for fulltime use. Underneath, we use the safest and most commercial-grade equipment we can…low-maintenance and safety are our biggest concerns.[48]

c.    Jayco: You can count on our RVs to go the distance…Quality: Unmatched engineering practices. Superior construction materials and processes.[49]

175.    Accordingly, Defendants engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349.

---

[47] THOR MOTOR COACH – GOLD STAR INSPECTIONS, https://www.thormotorcoach.com/gold-star-inspection/ (last visited Dec. 22, 2020).
[48] DRV SUITES – FRAMES, AXLES, TIRES AND BRAKES VIDEO, http://www.drvsuites.com/videos.html (last visited Dec. 22, 2020).
[49] JAYCO – THE JAYCO DIFFERENCE, https://www.jayco.com/about/jayco-difference/ (last visited Dec. 22, 2020).

176.    Defendants' acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

177.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

178.    Because Defendants' deception takes place in the context of public health, its deception affects the public interest. Further, Defendants' unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

179.    Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

180.    Because Defendants' willful and knowing conduct caused injury to Plaintiffs and the Class, Plaintiffs and the Class seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining FCA's deceptive conduct; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

181.    Plaintiffs and the Class also seek punitive damages because Ford engaged in aggravated and outrageous conduct.

## COUNT VI
## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW § 350)
### (On Behalf of the New York Class)

182.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

183.    The New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

184.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Ford, to be untrue and misleading to consumers, including Plaintiffs and Class members.

185.    Defendants have violated N.Y. Gen. Bus. Law § 350 because the omissions regarding the Axle Defect in Class Vehicles as described above, were material and likely to deceive a reasonable consumer.

186.    Plaintiffs and Class members have suffered injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing their Class Vehicles, Plaintiffs and Class members relied on the representations and/or omissions of the Defendants. Had Plaintiffs and Class members known these statements were false, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

187.    Accordingly, Plaintiffs and the Class overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles, which have also suffered diminution in value.

188.    Because Defendants fraudulently concealed the Axle Defect, the value of the Class Vehicles has greatly diminished.

189.     Plaintiffs, individually and on behalf of Class members, request that this Court

enter such orders or judgments as may be necessary to enjoin Ford from continuing its unfair,

unlawful and/or deceptive practices. Plaintiffs and Class members are also entitled to recover

their actual damages or $500, whichever is greater. Because Ford acted willfully or knowingly,

Plaintiffs and Class members are entitled to recover three times actual damages, up to $10,000.

**COUNT VII**
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301,** *et seq.***)**
**(Brought on Behalf of the Nationwide Class)**

190.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

though fully set forth herein.

191.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*,

in response to widespread consumer complaints regarding misleading and deceptive warranties.

The Act imposes civil liability on any "warrantor" for failing to comply with any obligation

under written and implied warranties. 15 U.S.C. § 2310(d)(1).

192.     The Class Vehicles are consumer products as defined by 15 U.S.C. § 2301(1).

193.     Plaintiffs and Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

194.     Defendants are warrantors and suppliers as defined by 15 U.S.C. § 2301(4) and

(5).

195.     Defendants have failed to remedy the Axle Defect, despite their knowledge and

notice of said defect in the Class Vehicles.

196.     Defendants expressly warranted that their Class Vehicles would be free of defects.

197.     At the time Defendants issued written warranties for the Class Vehicles, they

knew and had notice that the vehicles were susceptible to the Axle Defect, including *inter alia,*

(1) damage to the RVs; (2) lowered value of the RVs; and/or (3) unsafe driving conditions for

- 43 -

consumers and others on the roadways. Defendants' continued misrepresentations and omissions concerning the Axle Defect, as well as their failure to abide by their own written and implied warranties, are "unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, their behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

198.    Plaintiffs and Class members seek to recover damages caused as a direct result of Defendants' breach of their written and implied warranties and their deceitful and unlawful conduct. Damages include costs associated with repairing or replacing the Class Vehicles with non-defective vehicles and/or repair or replacement of axles and related components which caused the Axle Defect.

199.    The Magnuson-Moss Warranty Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Accordingly, Plaintiffs and Class members seek reformulation of Defendants' written warranty to comport with their obligations under the Act and with consumers' reasonable expectations. Additionally, Plaintiffs seeks to enjoin Defendants from acting unlawfully as further alleged, including discouraging Plaintiffs from seeking all available remedies. The Magnuson-Moss Warranty Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of the case.

<u>COUNT VIII</u>
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Kansas Class, Illinois Class, Indiana Class, and/or Wisconsin Class)**

200.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

201.    Defendants breached their Base Limited Warranty by selling to Plaintiffs and Class members Class Vehicles known to suffer from the Axle Defect, that are not of high quality, and which are unsuited for their ordinary and intended purpose, while refusing to cover the cost of repairs needed to cure the Defect.

202.    As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

203.    Plaintiffs notified Defendants of their breach and attempted to provide it an opportunity to cure the Axle Defect, but Defendants have not responded.

204.    Defendants attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect. Furthermore, Defendants continue to charge Class members for repairing the defective axles – if they repairs them at all -- when in fact such repairs are actually necessitated because of the known Axle Defect.

205.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

206.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT IX**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Kansas Class, Illinois Class, Indiana Class, and/or Wisconsin Class)**

207.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

208.    A warranty that the Class Vehicles were in merchantable condition is implied by law.

209.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the installation of Class Vehicles' axles, which are not of high quality, and which fail prematurely and/or fail to function properly.

210.    Defendants were provided notice of these issues by numerous informal and formal complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

211.    As a direct and proximate result of Defendants' breaches of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT VIII
## COMMON LAW FRAUD
### (On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Kansas Class, Illinois Class, Indiana Class, and/or Wisconsin Class)

212.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

213.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the inherent design defect with the Class Vehicles' axles, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the Axle Defect and all of the resultant problems.

214.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

215.    Plaintiffs and Class members reasonably relied on these omissions and suffered damages as a result.

## COUNT X
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Kansas Class, Illinois Class, Indiana Class, and/or Wisconsin Class)

216.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

217.    Plaintiffs and members of the Class conferred a benefit on the Defendants.

218.    Defendants had knowledge that this benefit was conferred upon it.

219.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representative of the Class and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Axle Defect;

F.    award reasonable attorney's fees and costs; and

G.    grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  January 11, 2020

*/s/ Scott D. Gilchrist*
Richard E. Shevitz
Scott D. Gilchrist
COHEN & MALAD, LLP
One Indiana Square Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
Facsimile: (317) 636-2593
Email: rshevitz@cohenandmalad.com
Email: sgilchrist@cohenandmalad.com

Matthew D. Schelkopf
Joseph B. Kenney
SAUDER SCHELKOPF, LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: 610-200-0583
Facsimile: 610-421-1326
Email: mds@sstriallawyers.com
Email: jbk@sstriallawyers.com

*Attorneys for Plaintiffs and*
*the Putative Class*